Syllabus.

# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## L. Webster Fox v. Walter N. Mason.

September 25, 1924.

1. APPEAL AND ERROR—*Motion for New Trial—Plaintiff who is Satisfied with Verdict Cannot Complain of Instructions.*—Formerly a motion for a new trial in the court below was a necessary prerequisite to a review on appeal of the judgment complained of. This general rule has been changed by a statute, see Code of 1919, section 6254, but it is still true that a plaintiff who is satisfied with the verdict will not be heard to complain of instructions. What boots it to him that they are wrong?

2. PHYSICIANS AND SURGEONS—*Care Required of Physicians and Surgeons.*—A physician or surgeon is required to exercise that degree of care and skill such as is exercised generally by physicians and surgeons of ordinary care and skill in similar communities. And ordinary care and skill have reference to the character and condition of the service. Due care in a lumber camp might be gross negligence at Johns Hopkins.

3. PHYSICIANS AND SURGEONS—*Care and Skill Required—Negligence—Failure to Cure—Res Ipsa Loquitur.*—A failure by a physician to cure is not enough, in itself, to raise an inference of negligence in the diagnosis or in the treatment adopted. The doctrine of *res ipsa loquitur* has no application, and negligence must be proven.

4. PHYSICIANS AND SURGEONS—*Care and Skill Required—Specialist.*—One who holds himself out as a specialist in the treatment of a certain organ, injury, or disease is bound to bring to the aid of one so employing him that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to that particular organ, injury, or disease, its diagnosis and its treatment, in the same general locality, having regard to the then state of scientific knowledge.

5. PHYSICIANS AND SURGEONS—*Duties of Surgeon after an Operation.*—The care and diligence and skill required of a surgeon relates to professional duties, and not to nursing and providing necessaries, etc. It is generally true that skill and care must be exercised by the surgeon, not only performing the operation, but also in the subsequent necessary treatment following such operation. This rule, however, is not of universal application. A Philadelphia surgeon,

sent for from Virginia to operate, could not be expected to remain
and superintend the treatment; but one who goes to Philadelphia
to see a surgeon and specialist, who undertakes his case, has a right
to look for reasonable care after the operation is performed.

6. Physicians and Surgeons—*Care and Skill Required—Conflicting Evi-
dence—Case at Bar.*—In the instant case plaintiff, a specialist,
brought an action of assumpsit against defendant to recover for
services in treating defendant. Defendant alleged that plaintiff
was negligent and unskillful in the treatment, and his evidence, if
true, established that fact. This, however, was denied by plaintiff,.
and his evidence, if true, supported his denial.

   *Held:* That the conflict was for the jury whose verdict must stand.
unless contrary to the evidence or without evidence to support it,
which was not true of the instant case.

7. Appeal and Error—*Judgment of Trial Court Setting Aside Verdict for
Plaintiff—Reversal.*—A judgment of the trial judge, setting aside a.
verdict for the plaintiff, is entitled to due consideration on appeal
as the trial judge saw and heard the witnesses. But where the·
evidence was clearly in conflict, and presented issues solely for the·
jury, the trial judge plainly erred in setting aside the verdict, and.
the Supreme Court of Appeals will render judgment for the plain-
tiff for the amount of recovery allowed him by the jury in their·.
verdict.

Error to a judgment of the Circuit Court of Accomac·
county, in an action of assumpsit. Judgment for de--
fendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Elmer W. Somers,* for the plaintiff in error.

*G. Walter Mapp,* for the defendant in error.

Holt, J., delivered the opinion of the court.

This is an action in assumpsit for $350.00 by Dr. L.
Webster Fox, against Walter N. Mason. The declara--
tion contains only the common counts. Defendant
pleaded the general issue, it was submitted to a jury,.

and there was a verdict for the plaintiff in the sum of
$175.00. This, on motion of the defendant, was set
aside and final judgment for him entered, to all of which
the plaintiff excepted. The defendant, a citizen of Ac-
comac county, Virginia, was suffering from a lachrymal
abscess and was treated by his local physician. He was
advised that he needed the services of a specialist, and
thereupon went to Philadelphia and consulted Dr. O.
Luther Latchford, who, after diagnosing his case, re-
ferred him to the plaintiff, Dr. Fox, a specialist of high
standing in diseases of this character. He confirmed
Dr. Latchford's diagnosis, and ascertained that the ab-
scess was enlarged and almost ready to burst and was of
opinion that an immediate operation was necessary, not
only to save the nasal cavity, but also to save the eye
itself. The operation, which is described as a major
one, the plaintiff promptly performed, and continued to
treat Mr. Mason for some time afterwards. The plea
gives no hint as to the character of the defense relied
upon, but from the evidence it appears that complaint
is made, not so much of the operation itself, as of sub-
sequent treatment, which it is said was unskillful and
negligent. The defendant contends, not that the fee is
excessive, but for reasons set out in the evidence that
nothing at all is due.

Certain instructions were tendered by the plaintiff
and refused by the court, to which exceptions were
taken. There was, as we have seen, a verdict for the
plaintiff, to which he did not except, and which he is
asking here be confirmed.

[1] In *Newberry* v. *Williams*, 89 Va. 298, 15 S. E. 865,
it was held that a motion for a new trial in the court be-
low was a necessary prerequisite to a review on appeal
of the judgment complained of. This general rule has
been changed by statute, see Code section 6254, but it

is still true that a plaintiff who is satisfied with the verdict will not be heard to complain of instructions. What boots it to him if they are wrong?

We are thus brought to the action of the court in setting aside the verdict of the jury and in giving final judgment.

[2-4] In considering the evidence it is necessary to ascertain what are the rights and duties of the plaintiff—what is required of him before he can recover.

"A physician attending a patient is bound by his contract, unless otherwise provided, to possess and to bestow upon the case such reasonable and ordinary skill and diligence as physicians practising in similar localities and in the same general line of practice ordinarily exercised in like cases, time and locality being taken into account. * * * These rules apply to surgeons as well as to physicians * * * * and one who accepts employment as a specialist must have that degree of skill and knowledge which is ordinarily possessed by physicians engaged in that specialty and must exercise his best judgment in the application of his skill and in the use of ordinary care." 5 Wharton & Stille's Med. Jurisp. section 473.

"In determining the degree of care and skill which the law exacts of physicians and surgeons, regard must be had to the state of advancement of the profession at the time of treatment. They are held to exercise the ordinary care and skill of their profession in the light of modern learning and enlightenment on the subject." 21 R. C. L. section 29.

Physicians and surgeons are held to that degree of care and skill "such as is exercised generally by physicians of ordinary care and skill in similar communities, and such is the rule established by the cases." 21 R. C. L. section 30.

To the same effect see *Chesley* v. *Durant*, 243 Mass. 180, 137 N. E. 301; *Edwards* v. *Uland* (Ind.), Sup. 140, N. E. 546; *Knowles* v. *Blue*, 209 Ala. 27, 95 So. 481; *Berkholz* v. *Benepe*, 153 Minn. 335, 190 N. W. 800; *Kuhn* v. *Brownfield*, 34 W. Va. 252, 12 S. E. 519, 11 L. R. A. 700; *Ewing* v. *Goode* (C. C.), 78 Fed. 442; *Hunter* v. *Burroughs*, 123 Va. 113, 96 S. E. 360.

The rule is the same as to specialists.

In *Rann* v. *Twitchell*, 82 Vt. 79, 71 Atl. 1045, 20 L. R. A. (N. S.) 1030, the court said:

"One who holds himself out as a specialist in the treatment of a certain organ, injury, or disease is bound to bring to the aid of one so employing him that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to that particular organ, injury, or disease, its diagnosis, and its treatment, in the same general locality, having regard to the then state of scientific knowledge." 82 Vt. 79, 71 Atl. 1045, 20 L. R. A. (N. S.) 1030; 21 R. C. L. section 32; 3 Wharton & Stille's Med. Jurisp. 475.

There is no conflict of authorities if we remember that ordinary care and skill have reference to the character and condition of the service. Due care in a lumber camp might be gross negligence at Johns Hopkins. The surgeon is not an insurer. *Kuhn* v. *Brownfield, supra.*

"A failure to cure is not enough in itself to raise an inference of negligence in the diagnosis and treatment adopted." *Edwards* v. *Uland, supra.*

"But his (the physician) engagement is not to cure the patient, nor does he insure that his treatment will be successful. The mere failure to effect a cure does not even raise a presumption of a want of proper care, skill and diligence." *Lawson* v. *Conoway*, 37 W. Va. 159, 16 S. E. 564, 18 L. R. A. 627, 38 Am. St. Rep. 17.

See also *Knowles* v. *Blue, supra;* 3 Wharton & Stille's Med. Jurisp., section 466.

And this is in substance the decision in *Hunter* v. *Burroughs, supra.* All that case held was that some weight might be given to results along with other facts and circumstances proven in the case, just as exclusive unexplained possession of property recently stolen does not warrant a presumption of housebreaking, but may be considered along with other evidence.

[5] The doctrine of *res ipsa loquitur* has no application and negligence must be proven. *Ewing* v. *Goode, supra.*

What are the duties of a surgeon after an operation?

"But the care and diligence, and skill required, relates to professional duties and not to nursing and providing necessaries, etc. He is not bound to nurse his patients and provide for them, though he is required to instruct others how to do it." 3 Wharton & Stille's Med. Jurisp., section 473. Citing *Graham* v. *Gautier*, 21 Tex. 111.

In *Gillette* v. *Tucker*, 67 Ohio St. 106, 65 N. E. 865, 93 Am. St. Rep. 639, the court said:

"Moreover, we hold the proposition to be sound that this degree of skill and care is to be exercised, not only in performing the operation, but in the subsequent necessary treatment following such operation, unless the terms of employment otherwise limit the service or the surgeon gives the patient notice that he will not or cannot afford the subsequent treatment."

This rule is approved in a note to that case, page 666. It is not of universal application. A Philadelphia surgeon sent for from Virginia to operate could not be expected to remain and superintend the treatment, but one who goes to Philadelphia to see a surgeon and

specialist who undertakes his case has a right to look for reasonable care after the operation is performed.

In the instant case Dr. Fox continued to treat Mr. Mason and so the question as to whether or not it was his duty to do this is unimportant.   He did undertake it and in doing it he must have used that skill and care which could reasonably be expected in a specialist circumstanced as he was.

[6] We come now to the evidence itself:   That for the plaintiff, if true, establishes the following facts:

Mr. Mason went to Philadelphia on March 5, 1919, to consult Dr. O. L. Latchford, who ascertained that he was suffering from lachrymal abscesses and that his condition was serious.   He thereupon referred him to the plaintiff, Dr. L. Webster Fox, a specialist in ophthalmic surgery of wide experience.   Dr. Fox confirmed Dr. Latchford's diagnosis and was of opinion that an immediate operation was necessary to save, not only the nasal cavity, but the eye itself.   This operation he successfully performed on March 7th at the Medico-Chirurgical Hospital.   The patient remained at this hospital for two or three weeks.   When he went to his hotel and continued there until his return to Virginia on April 17th.   During all this time Dr. Fox treated this wound with antiseptic solutions, packed it with iodoform gauze, etc., under which treatment he made satisfactory progress towards recovery.   On April 17th he went home and returned on the 30th, at which time it was ascertained by Dr. Fox that there was some recurrence of the lachrymal trouble and that inflammation had descended into the antrum, which is the upper jaw bone.   He called into consultation Dr. Robert F. Ridpath, a nose specialist, who opened up this antrum and found it infected, possibly from an extension of the trouble for which he had already been treated.   · This

was on May 2nd.   Dr. Ridpath treated him four times following close upon his operation for this antrum trouble.   At that time, there was still a slight discharge from the lachrymal duct, but the eye had been saved and Mr. Mason was cured so far as anything deleterious to his health was concerned.   Dr. Fox last saw him at his office on June 22nd.   He was then about well.

After the operation of March 7th, it became necessary to insert into the wound for drainage purposes a small gold tube or camula, and on one or more occasions it was necessary to remove this, thus necessitating a minor operation.   It was also necessary to pack the patient's nostril with antiseptic gauze.   This was done just before his return home on April 17th.   It was properly done and the rise in temperature and trouble which afterwards occurred was not due to it, nor to any unskillful treatment.   This packing was removed by Dr. Ridpath on May 2nd.

That for the defendant, if true, establishes the following facts:

Just before he returned home on April 17th Dr. Fox either caused or permitted this camula to slip down into the infected cavity and its removal was exceedingly painful.

The packing put in his nostril on April 17th, and just before his return home, caused the pus to dam up and so reinfected him that it practically put him back to where he was in the beginning and necessitated his return to Philadelphia for further treatment.   He returned on April 30th.   He selected Dr. Ridpath and it was under his treatment that a cure was effected.

What was true was for the jury to say.   Conditions under which a verdict can be set aside by the trial court have been so often and satisfactorily stated that we will content ourselves with citing *Davis* v. *McCall*, 133 Va.

487, 113 S. E. 835; *N. & W. Ry. Co.* v. *Thayer*, 137 Va. 294, 119 S. E. 107.

The verdict must stand unless it is contrary to the evidence or without evidence to support it; neither status obtains here.

[7] The judgment of the trial court, after setting aside the verdict for the plaintiff, was rendered for the defendant upon all the evidence, under section 6251 of the Code. The judgment of the learned trial judge, who saw and heard the witnesses, is entitled to due consideration in this appeal. But the evidence was clearly in conflict and in our opinion presents issues solely for the jury. Giving proper weight to what was said by Judge Burks in *Ricketts* v. *J. G. McCrory Company*, 138 Va. 548, 121 S. E. 916, our conclusion is that the learned trial judge erred in setting the verdict aside, and that this court should now render judgment for the plaintiff for the amount of recovery allowed him by the jury in their verdict. And it is so ordered.

*Reversed.*