GRACE E. MASON *vs.* PETER S. W. GEDDES.

Franklin.    October 18, 1926. — December 18, 1926.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Physician and Surgeon.    Evidence,* Presumptions and burden of proof, Matter of conjecture.

At the trial of an action against a physician and surgeon for alleged negligence in attendance upon the plaintiff in childbirth, there was evidence that the child was the plaintiff's first born; that it was necessary to use forceps, that the forceps slipped on the child's head; that a chair slipped from under the defendant and that he fell on the floor; that patience and time are required in the delivery of a child with the aid of forceps, and that with the first child it would require probably about an hour to do it properly; and that the child was delivered in fifteen minutes.    *Held,* that it could have been found that either by carelessness in the use of the forceps, or by undue haste in the delivery of the child, or by both, the plaintiff received the injury complained of.

At the trial of the action above described, the plaintiff under a second count of her declaration contended that as a result of the delivery the plaintiff suffered an extensive tear of the perineum going through into the sphincter muscle, an operation to repair which the defendant negligently delayed.    The defendant was a practising physician and surgeon in Greenfield, and the alleged neglect occurred there.    The only evidence showing that the delay complained of was improper was in testimony by a surgeon practising in Boston, who was called as an expert by the plaintiff and who in direct testimony stated that the repair operation should be done as soon as possible; in cross-examination he stated that it should be done at once if the condition of the patient was such that it could be safely done, and that reputable doctors, whose opinion he "ought to respect," advised "that repair operations be deferred."    Several physicians, practising in Greenfield and vicinity, testified for the defendant that an operation should not be performed immediately after childbirth, that it should be delayed for three months or more for reasons given by them, and that by such

delay better results would be obtained. The plaintiff's expert, when asked, "Would you say that the reasonable probabilities are that, if it was taken care of right away, you would be able to get a better union than you would if it was postponed?" answered "As good at least." There was a general verdict for the plaintiff. *Held*, that

(1) There was no evidence that the delay in the repair operation was harmful to the plaintiff;

(2) The defendant was responsible to the plaintiff only for failure to use the care and skill ordinarily possessed by members of his profession in the community where he practised;

(3) Even if no credit were given to the physicians who testified for the defendant, the record disclosed no evidence warranting a finding that the defendant failed to exercise the skill ordinarily possessed by members of his profession in Greenfield or in that locality;

(4) A motion by the defendant for a verdict in his favor under the second count should have been allowed.

TORT for personal injuries, alleged to have resulted from negligence of the defendant as a physician and surgeon. Writ dated September 20, 1924.

The declaration is described in the opinion.

In the Superior Court, the action was tried before *Greenhalge*, J. Material evidence is described in the opinion. At the close of the evidence, the defendant moved that a verdict be ordered for him on each count of the declaration. The motion was denied. The defendant then asked for the following rulings, among others:

"4. There is no evidence in this case from which the jury would be warranted in finding that the tear received in childbirth was due to any negligence on the part of the defendant unless you find that his failure to comply with St. 1917, c. 55, § 3, constituted such negligence."

"10. It is not evidence of negligence in this case that the defendant deferred his reparatory operation and did not perform it immediately."

The rulings were refused. There was a general verdict for the plaintiff in the sum of $7,500. The defendant alleged exceptions.

The case was submitted on briefs.

*J. B. Ely & J. T. Bartlett*, for the defendant.

*W. A. Davenport & C. Fairhurst*, for the plaintiff.

CROSBY, J. This is an action of tort brought against a practising physician in the town of Greenfield in this Com-

monwealth, to recover for injuries resulting from alleged improper treatment by the defendant. The declaration is in three counts, and alleges in substance (1) that the defendant negligently treated and cared for the plaintiff and failed to exercise that judgment which he professed to possess in the treatment of the plaintiff's case; and (2) that the defendant negligently failed to operate upon the plaintiff seasonably and failed to exercise that judgment which he professed to possess in the treatment of the plaintiff's case.

The record shows that the defendant attended the plaintiff before and during childbirth and for some time thereafter. The child was delivered by the use of forceps on February 2, 1920. It was the plaintiff's first child. As a result of the delivery the plaintiff suffered an extensive tear of the perineum going through into the sphincter muscle. Eleven days after the birth of the child the defendant called Dr. Albert G. Stetson, a practising surgeon of Greenfield, to make arrangements to operate upon the plaintiff to repair the tear above referred to. The defendant decided that such operation should not be performed until three months later and Dr. Stetson testified that such delay was required under the circumstances.

Lucy H. Sanders, a nurse, testified that she attended the plaintiff during her confinement and was present when the child was delivered; that during that operation the forceps slipped on the child's head; that the chair slipped from under the defendant and that he fell on the floor; that he said he would not "sew her up then that he would do it later on. He said he did not feel equal to doing it. He said he felt tired and didn't want to do it at that time. He didn't say when he would do it." The hospital records show that the defendant was called at 1:40 in the morning, and that the child was delivered with the aid of forceps fifteen minutes later. There was evidence tending to show that much patience and time are required in the delivery of a child with the aid of forceps, and that with the first child it would require probably about an hour to do it properly.

Although the evidence tending to show negligence on the part of the defendant in the delivery of the child was meagre,

yet if the testimony of the nurse that the forceps slipped and that the chair occupied by the defendant while using them slipped from under him and he fell to the floor were believed, as also the evidence that he delivered the child in fifteen minutes, in connection with the other evidence, a finding of negligence was not unwarranted and the judge in effect so instructed the jury. It could have been found that either by carelessness in the use of the forceps, or by undue haste in the delivery of the child, or by both, the plaintiff received the injury complained of. The defendant was responsible to the plaintiff for failure to use the care and skill ordinarily possessed by members of his profession in the community where he practised. *Small* v. *Howard,* 128 Mass. 131. *Tucker* v. *Stetson,* 233 Mass. 81, 84. *Carey* v. *Mercer,* 239 Mass. 599. *Chesley* v. *Durant,* 243 Mass. 180, 182. It follows that the motion for a directed verdict upon the first and third counts was rightly denied and that the defendant's fourth request could not properly have been given.

The questions remain, whether a verdict for the defendant should have been directed upon the second count, and whether the defendant's tenth request, in substance that it was not evidence of negligence that the defendant did not immediately operate on the plaintiff to repair the tear caused by the delivery of the child, should have been given.

Several physicians, including the defendant, testified that an operation of this nature should not be performed immediately after childbirth, that it should be delayed for three months or more (for reasons given) and that by such delay better results would be obtained. Dr. Kellogg, called by the plaintiff, testified that an operation to repair the torn part should be done as soon as possible. He was the only witness who so testified. In cross-examination he stated that the tearing of the perineum and sphincter muscle sometimes happens in childbirth without any fault of the doctor; that it should be repaired at once if the condition of the patient is such that it can be safely done. He further testified as follows: "I find reputable doctors whose opinion I ought to respect advise that repair operations be deferred." In reply to a question put by the defendant's counsel in

recross-examination this witness said: "I don't think I told you that some other doctors would take a different opinion from me. I may have. I think it is perfectly reasonable that some other doctors do. I don't know . . . I presume I did tell you that reputable physicians frequently defer these repair operations. I don't know of any that do but I come to know at times cases that have not been taken care of when they should have."

Although Dr. Kellogg was the only witness who testified that the plaintiff should have been operated upon immediately and the tear repaired, it is plain from his other testimony that there were reputable physicians who believed such an operation should be deferred until a later time, and this was the opinion of the defendant and of Dr. Stetson who performed the operation, as well as of other medical witnesses called by the defendant.

The plaintiff is entitled to have the question of negligence of the defendant considered upon the aspect of the evidence most favorable to her. If negligence for failure immediately to repair the tear is to be found, it must rest on the testimony of Dr. Kellogg alone. If the jury believed the testimony of Dr. Kellogg that the operation should have been performed immediately after the delivery of the child, there is no evidence that the delay was harmful to the plaintiff or that such delay was evidence of negligence. In his direct examination the doctor was asked "Would you say that the reasonable probabilities are that if it was taken care of right away that you would be able to get a better union than you would if it was postponed?" His answer was, "As good at least." Upon this testimony it does not appear that the delay resulted in a different condition than if the repair operation had been performed at once. To hold otherwise would allow the jury to determine the question of negligence of the defendant merely upon speculation or conjecture.

Dr. Kellogg testified that he was a practising physician in Boston. The medical skill required of a physician in a large city cannot be regarded as the test of the professional qualifications required of a physician in the country. Physicians, called by the plaintiff and by the defendant, practising in

Greenfield and vicinity, testified that the defendant's treatment of the plaintiff was proper. If this evidence was not credited by the jury, still there was no evidence warranting a finding that the defendant failed to exercise the skill ordi-·narily possessed by members of his profession in Greenfield or in that locality. It follows that the refusal to direct a verdict for the defendant on the second count was error.

As no exceptions to the admission or exclusion of evidence are argued by the defendant, they are treated as waived.

*Exceptions sustained.*